**Lorraine DERENSIS, et al., Plaintiffs,**

v.

**COOPERS & LYBRAND CHARTERED ACCOUNTANTS, et al., Defendants.**

**Civ. No. 94–4202 (WGB).**

United States District Court,
D. New Jersey.

March 12, 1996.

---

Law Offices of John A. Maher by John A. Maher, Summit, NJ, for Plaintiffs.

Shanley & Fisher, P.C. by Arthur R. Schmauder, Sheila G. Gruber, Morristown, NJ, for Defendant Coopers & Lybrand Chartered Accountants.

Norris, McLaughlin & Marcus by William C. Slattery, Kevin R. Jespersen, Somerville, NJ, for Defendants Alan C. Campney and Caspar Koch.

BASSLER, District Judge:

Defendant Coopers and Lybrand Chartered Accountants ("Coopers") moves to dismiss on the ground of forum non conveniens. Defendants Alan C. Campney and Caspar Koch join in Coopers' motion and also move to dismiss for lack of personal jurisdiction and failure to state a claim. This court's jurisdiction is pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331 and § 1337. For the following reasons, defendants' motions to dismiss are DENIED.

## I. BACKGROUND

This consolidated class action arises out of International Nesmont Industrial Corporation's ("Nesmont") filing of allegedly fraudu-

lent information with the Securities and Exchange Commission.

Nesmont is incorporated in British Columbia and has its principal office in that province. Nesmont processes gold from gold ore to create purified gold pellets, primarily for the jewelry market in Los Angeles, California. Nesmont stock was listed on the NASDAQ exchange from May 21, 1993 to August 8, 1994. Plaintiffs allege that Nesmont filed misleading financial statements with the SEC throughout the time the stock was listed on NASDAQ. Plaintiffs contend that the financial statements were materially false and misleading because they overstated Nesmont's inventory by over $10 million by counting brass bars as gold bars. As a result, Nesmont's 1992 financial statements showed a profit of $219,000 Canadian when in fact, the company had suffered a loss of over $7 million Canadian.

Coopers allegedly contributed to this scheme by giving its stamp of approval to the fraudulent financial statements that Nesmont submitted to the SEC. Plaintiffs assert that Coopers' liability arises principally from its April 10, 1993 unqualified opinion in connection with the year end 1992 financial statements of Nesmont. They allege that Coopers had actual knowledge of the fraud as early as January, 1994 but permitted the stock to trade for another eight months.

Plaintiffs contend that the misleading information artificially inflated the price of Nesmont stock, defrauding thousands of U.S. investors. The stock was also listed on the Vancouver stock exchange and Canadian investors were similarly defrauded.

Plaintiffs bring this class action on behalf of "[a]ll persons who purchased securities of Nesmont from May 24, 1993 (the date upon which Nesmont filed its annual report with the Securities and Exchange Commission for the year ended December 31, 1992) through August 8, 1994 (the date the Company's stock was delisted from NASDAQ)." They allege causes of action under § 10(b), § 20 and Rule 10b–5 of the Exchange Act against Coopers and Nesmont officers and directors.

Nesmont filed for protection from its creditors in British Columbia and obtained a stay of all actions and proceedings against it on September 26, 1994. Based on this order, the U.S. Bankruptcy Court for the Southern District of New York granted a stay against all proceedings against Nesmont in the United States. Consequently, Nesmont is not a party to this action.

## II.  DISCUSSION

### A.  Forum Non Conveniens Standard

■ The doctrine of forum non conveniens provides this court with discretion to dismiss an action "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish ... oppressiveness and vexation to the defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981) quoting *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831–32, 91 L.Ed. 1067 (1947).

■ The court must initially determine (1) whether an adequate alternative forum exists and (2) the amount of deference to be accorded plaintiff's choice of forum. *Lony v. E.I. DuPont de Nemours & Co.,* 886 F.2d 628, 633 (3d Cir.1989); *Lacey v. Cessna Aircraft Co. (Lacey I),* 862 F.2d 38, 45 (3d Cir.1988). If the alternative forum is adequate, the court must then evaluate whether the public and private interests favor dismissal.

■ In order to satisfy the adequacy requirement, the defendant must establish two conditions: "(1) the defendant must be amenable to process in the alternative forum, and (2) the subject matter of the lawsuit must be cognizable in the alternative forum in order to provide the plaintiff appropriate redress." *Kultur Int'l Films Ltd. v. Covent Garden Pioneer, FSP., Ltd.,* 860 F.Supp. 1055, 1063 (D.N.J.1994) (citations omitted). Unless the law in the alternative forum is "'so inadequate or unsatisfactory that it is no remedy at all,' the possibility that [plaintiffs] may receive less favorable results is not a factor to be considered." *Kultur,* 860 F.Supp. at

1064 quoting *Piper,* 454 U.S. at 254, 102 S.Ct. at 265.

If the defendant establishes that the alternative forum is adequate, the court must consider several private and public interests. The private interest factors include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of the unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The public interest factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 (citing *Gulf Oil,* 330 U.S. at 509, 67 S.Ct. at 843). Neither list of factors is exhaustive, and certain factors may be more or less relevant in particular cases. *Van Cauwenberghe v. Biard,* 486 U.S. 517, 528, 108 S.Ct. 1945, 1952–53, 100 L.Ed.2d 517.

The trial court should make its forum non-conveniens determination by balancing all of the relevant factors. However, a "[p]laintiff's choice of forum should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant." *Lacey I,* 862 F.2d at 43. "The defendant bears the burden of persuasion as to all elements of the forum non conveniens analysis." *Id.* at 43–44.

### B. Adequacy of Alternative Forum

Defendants have not met their burden of establishing that an adequate alternative forum exists. Defendants have satisfied the first requirement that all defendants are amenable to process in Canada. They have failed to satisfy the second requirement, however, that the alternative forum will provide the plaintiffs with redress. There are several potential problems with the Canadian forum. Canada does not have a well-developed class action procedure. Although Ontario and British Colombia have recently enacted statutes creating class actions, these procedures may not provide an appropriate remedy for the plaintiffs.

As an initial matter, the court must determine the effect of Coopers' proposed stipulation. In an apparent attempt to remedy the deficiencies in the alternative forum, Coopers stipulates that the "fraud-on-the-market" theory would apply to the claims of U.S. investors and that Coopers will not oppose the certification of the class action in Canada. Kirkham June 30, 1995 Aff.Exh.A. Campney and Koch have also agreed to be bound by this stipulation. Although Coopers has diligently attempted to modify the forum, it can not do so by its own efforts. The Canadian courts are not bound by Coopers' evaluation of how the action should proceed. Locke August 9, 1995 Aff. at 4–6. In addition, even if the stipulation were binding on the Canadian court with respect to Coopers, Campney and Koch, it is not applicable to other defendants. The stipulation can not cure any potential deficiencies in the Canadian forum.

Plaintiffs offer the affidavits of Charles C. Locke and Harvey T. Strosberg, members of the Canadian bar, indicating that the action is not likely to be certified as a class action in either Ontario or British Columbia. The Ontario class action statute provides that a proposed class must meet the following criteria:

> (a) the pleadings or the notice of application discloses a cause of action; (b) there is an identifiable class of two or more persons who would be represented by the representative plaintiff or defendant; (c) the claims of defenses of the class members raise common issues; (d) a class proceeding would be the preferable procedure for resolution of common issues; (e) there is a representative plaintiff or defendant who, (i) would fairly and adequately represent the interests of the class, (ii) has

produced a plan for the proceeding that sets out a workable method of advancing the proceeding on behalf of the class and of notifying class members of the proceeding, and (iii) does not have, on the common issues for the class, an interest in conflict with the other members of the class.

Ont. Class Proceedings Act § 5(1). The British Columbia statute imposes substantially identical requirements. Kirkham July 11, 1995 Aff. at 2. There are several reasons why plaintiffs may not satisfy these requirements.

Defendants admit that Canada does not recognize the fraud-on-the-market theory advanced by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Under this theory, purchasers are not obligated to prove specific reliance on false information because it may be assumed that they relied on the accuracy of the stock's price and that the price reflected all of the available information in the market. Consequently, a class action may not be the appropriate method of resolving the dispute. If each member of the class is required to establish individual reliance, the individual issues may preclude certification. Although defendants contend that the court could allow affidavits establishing individual reliance, the case they cite allowed affidavits attesting to a lack of specific knowledge, not reliance on specific statements. In addition, the defendant has not shown that the plaintiffs specifically relied on these statements. "[I]n the context of a claim for secondary market securities fraud, this device [class action] is virtually meaningless without having fraud-on-the-market substitute for individual reliance." *Trafton v. Deacon Barclays de Zoete Wedd Ltd.*, No. C 93–2758–FMS, 1994 WL 746199, at *12 (N.D.Ca. Oct. 21, 1994).

Defendants' evidence is not to the contrary. Coopers offers the affidavits of Jeffrey Leon and D. Barry Kirkham, members of the Canadian bar, in support of their contention that the suit could proceed as a class action in Canada. These affidavits do not satisfy defendants' burden. Although both Leon and Kirkham conclude that the class would be certified in Canada, their opinions rely heavily on the assumption that the court would accept the conditions in Coopers' stipulation. *See e.g.*, Leon July 7, 1995 Aff. at 5, 9, 11, 12; Kirkham July 11, 1995 Aff. at 2. As discussed above, this premise is dubious and will not be accepted by this court as a basis for evaluating the alternative forum.

Plaintiffs may also be precluded from bringing a class action in Canada because they are United States citizens. The British Columbia class action statute specifically requires a British Columbia citizen to bring the suit. Kirkham, July 11, 1995 Aff. at 2. Even if a British Columbia citizen brought the suit, it is not clear how the resident plaintiffs would satisfy the requirement that the class action is the preferable means of resolution where the Canadian plaintiffs must prove individual reliance but the United States plaintiffs do not need to establish reliance. Residency is not specifically addressed in the Ontario statute, but there is no indication that the courts would certify a class composed predominantly of nonresidents.

Defendants argue that the class action could proceed in one of three ways: (1) a British Columbia resident could bring the action; (2) two or more plaintiffs could bring separate actions against Coopers which Coopers could consolidate as a class action; or (3) if the residency requirements are not raised by the defendants in opposition to the certification, the court may certify the class despite its nonconformity with the statute. Kirkham July 11, 1995 Aff. at 2–4. None of these options is satisfactory.

The first option requires the plaintiffs to seek a British Columbia resident who is willing to bring the action and who would meet the other requirements of the Act. This is clearly not an adequate way for the claims to proceed. The second option requires Coopers to consolidate two or more individual actions. An alternative which predicates the existence of the case on the future action of the defendant is not a satisfactory alternative. Even if this court accepts Coopers' analysis that residency is not a jurisdictional issue and a Canadian court will not raise it, the third method ignores the fact that the other defendants are not bound by the stipu-

lation and may oppose the certification of the class on the basis of residency.

Coopers has not met its initial burden of establishing the existence of an adequate alternative forum. Consequently, the court must deny Coopers' motion to dismiss for forum non conveniens.

## C. Balancing of Other Factors

Assuming that Coopers had established that Canada was an appropriate alternative forum, the balance of public and private interest factors also favor maintaining the action in the United States. "To prevail on a forum non conveniens motion, the movant must show that the balance of these factors tips decidedly in favor of trial in the foreign forum. If, when added together, the relevant private and public interest factors are in equipoise, or if they lean only slightly toward dismissal, the motion to dismiss must be denied." *Lacey v. Cessna Aircraft Co. (Lacey II)*, 932 F.2d 170, 180 (3d Cir.1991). The factors must be balanced qualitatively, not quantitatively, and the relative weight to be accorded each factor varies with each case. *Id.* at 182.

### 1. Private Factors

"In weighing the *Gulf Oil* factors, th[e] court generally must defer to the plaintiff's choice of forum unless the balance is tipped strongly in favor of dismissal." *Kultur*, 860 F.Supp. at 1065. "Deference to the plaintiff's choice of forum is particularly required where the plaintiff resides in the forum state." *Id.* One of the plaintiffs, Lorraine Derensis, is a resident of New Jersey.

Defendants argue that the plaintiffs' choice of forum is not entitled to deference in a class action. Defendants cite *Koster v. American Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), in which the Supreme Court noted that where "there are hundreds of potential plaintiffs, ... all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Id.* at 524, 67 S.Ct. at 832. *Koster* is readily distinguishable, however, because it involved a choice between two United States forums, New York and Illinois. At the time, 28 U.S.C. § 1404, authorizing changes of venue, did not exist and the court transferred venue on the basis of forum non conveniens. The class plaintiffs here have chosen a forum in the United States as opposed to a foreign forum, and the court finds that it is appropriate to give deference to that choice.

In addition to evaluating the appropriate level of deference to plaintiff's choice of forum, the court must consider the following private interest factors:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of the unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843.

The first private interest factor is the relative ease of access to sources of proof. Coopers argues that voluminous documentary evidence and essential non-party witnesses are located in Canada. For example, plaintiffs' Rule 26 disclosures identify 26 persons or entities with knowledge or relevant facts and 20 of them are located in Canada.

Plaintiffs argue, however, that many key witnesses and extensive documentary evidence are located in the United States. Defendants Nestor and Montgomery, the alleged "driving force" behind the scheme, are both United States citizens. Furthermore, Coopers contacted seventeen United States entities in connection with its 1992 audit of Nesmont. Lavalee Decl. ¶ 16. Plaintiffs also argue that most of the tangible evidence is contained in documents, and thus, is easier to access than evidence that could not be removed from the foreign forum, such as an accident scene. Notwithstanding plaintiffs' arguments, the relative ease of access to sources of proof favors the Canadian forum.

The second factor that the court must consider is the "availability of compulsory process for attendance of the unwilling, and the cost of obtaining attendance of willing, wit-

nesses." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. Coopers suggests that Canadian court rules would preclude compulsory pre-trial testimonial and evidentiary discovery of Canadian non-party witnesses to aid in this proceeding. D. *Barry Kirkham* Nov. 10, 1994 Aff. § 4.

Plaintiffs have produced the affidavit of Charles C. Locke, a former judge of both the Supreme Court of British Columbia and the British Columbia Court of Appeal, who indicates that there is no "hard and fast rule against enforcing letters of request for the purposes of discovery. Rather the purpose of the letters of requests is one factor for the Supreme Court to consider in determining whether to enforce them." Locke Aff. ¶ 18. Locke also indicates that it is "comparatively common" for the Supreme Court of British Columbia to enforce letters of request issued by U.S. courts.

In response to Locke's affidavit, the defendants have submitted the affidavit of William Rogers McIntyre, a former judge of the Supreme Court of Canada. McIntyre agrees with Locke's general statement of the law, indicating that "there is no fixed rule which would rule out assistance to a foreign court for the purposes of discovery." McIntyre Aff. ¶ 5. Rather, the court will exercise its discretion based upon "a consideration of all the circumstances arising in any given case" and "[w]here there is no limitation or infringement of Canadian sovereignty, and where all the facts are such that justice can only be done by ordering the examination, the Court should not refuse to make the order solely because the testimony relates to a pre-trial proceeding." *Id.* at ¶ 7.

Coopers also argues that a British Columbia court may decline to enforce letters rogatory issued by this court because the Canadian court would feel that this court violated comity by denying Coopers' forum non conveniens motion. This court will not engage in such rank speculation regarding the integrity of Canadian judges. Coopers has not identified any case in which disapproval of a foreign court's exercise of jurisdiction was a factor in a Canadian court's decision whether to enforce letters of request, and former Judge Locke indicates that he is not aware of

any such case. Locke Aff. ¶ 26. Furthermore, the defendants' own legal expert, former Judge McIntyre, indicates that the Canadian courts would not refuse to enforce letters of request on this basis. McIntyre Aff. ¶ 8.

Coopers' final argument is that the lack of compulsory process over Canadian non-party witnesses will hinder its defense. Coopers contends that even if videotaped depositions of Canadian non-party witnesses are available, they are not adequate in a case where fraud is alleged. Coopers' own submissions indicate, however, that compulsory discovery is more limited in Canada than in the United States. *See* Kirkham Nov. 10, 1994 Aff. § 5; *see also* Locke May 15, 1995 Aff. ¶ 32. Coopers is likely to confront substantial obstacles to obtaining discovery and compulsory testimony in Canada as well as the United States.

### 2. Public Interest Factors

In addition to evaluating the private interest factors, the court must also examine the public interest factors. The relevant public interest factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 (citing *Gulf Oil*, 330 U.S. at 509, 67 S.Ct. at 843). In evaluating the public interest factors, the court "must 'consider the focus of the alleged conduct ... and the connection of that conduct to plaintiff's chosen forum'." *Lacey I*, 862 F.2d at 45 quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988).

The first public interest factor that the court must examine is the "administrative difficulties flowing from court congestion." Coopers argues that this factor favors the Canadian forum because in Canada trial

dates are allotted approximately one year after the plaintiffs apply for a trial date, Kirkham Aff. ¶ 6, whereas in the District of New Jersey cases proceed to trial on an average of 23 months. *Kultur,* 860 F.Supp. at 1068. As plaintiffs point out, however, trials in the Supreme Court of British Columbia are frequently "overbooked" and cases are often bumped to a later trial date. Locke Aff. ¶ 33. Furthermore, although the parties may request a trial date one year from application, due to scheduling problems and the time required for pre-trial proceedings, they may not receive it. Locke Aff. ¶ 33. Consequently, the court congestion factor does not favor either forum.

The second factor that the court must consider is the local interest in having the controversy settled at home. This factor overwhelmingly favors the plaintiffs. The plaintiffs seek redress for alleged violations of the United States securities laws. In general, "public policy favors providing a forum in which United States citizens may seek to redress an alleged wrong." *American Home Assurance Co. v. Insurance Corp. of Ireland Ltd.,* 603 F.Supp. 636, 642 (S.D.N.Y.1984).

The fraud predominately impacted individuals trading on the NASDAQ. Nesmont stock also traded on the Vancouver Stock Exchange ("VSE"), however, total daily volume of trading on NASDAQ was more than 350% of the total daily volume on the VSE during the portion of the class period that the stock was trading on both markets. Lavallee Decl. Exh. C.

The United States has a strong public policy of protecting the integrity of its securities markets. *See e.g., SEC v. Banca Della Svizzera Italiana,* 92 F.R.D. 111 (S.D.N.Y. 1981) ("[t]he strength of the United States' interest in enforcing its securities laws to ensure the integrity of its financial markets cannot seriously be doubted"). The Securities and Exchange Act itself indicates that "transactions in securities as commonly conducted upon the securities exchanges and over-the-counter markets are affected with a national public interest." 15 U.S.C. § 78b.

Coopers correctly argues that Canada has an interest in regulating the conduct of its corporate entities and in supervising the work of its chartered auditors. As the *Trafton* court noted, however, "[w]hile Canada admittedly has an interest in regulating the conduct of its corporate entities.... [t]he United States' interest in securities regulation to protect the 'integrity of both domestic investor decision and market mechanisms' is overriding." *Trafton,* 1994 WL 746199 at *13 (citations omitted).

This case concerns an alleged fraud perpetrated on a U.S. securities market (NASDAQ) and involves allegedly fraudulent disclosures in documents filed with the SEC and disseminated to investors who relied on the integrity of the U.S. market system. Consequently, the public as a whole has a strong interest in the plaintiffs pursuing redress in the United States.

The third factor that the court must consider is the "avoidance of unnecessary problems in conflict of laws, or the application of foreign law." *Piper,* 454 U.S. at 241, 102 S.Ct. at 258. This factor also favors plaintiffs. This action is brought under the United States securities laws and those laws, not Canadian securities laws, will apply. In fact, Coopers has stipulated that United States law, specifically the fraud on the market theory embodied in *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), would apply if the action were brought in Canada. Thus, the Canadian court would be applying foreign law. Although Coopers argues that this court must evaluate whether Coopers' conduct is in accordance with Canadian Generally Accepted Auditing Standards ("GAAS"), the core of this litigation is the United States securities laws. Consequently, this factor favors the New Jersey forum.

The final factor that the court must consider is whether it is unfair to burden citizens of this forum with jury duty. Given the strong public interest in maintaining the integrity of the securities markets, the court concludes that the nexus between the forum and the lawsuit is not so attenuated that it would be unfair to impose jury duty on New Jersey residents.

In addition to the public interest factors enumerated in *Piper*, Coopers raises three new factors in its reply brief: (1) Coopers would be unable to implead other parties; (2) plaintiffs would be forced to collect a judgment in Canada; and (3) Coopers is subject to duplicative litigation and inconsistent judgments. As an initial matter, the court notes that Coopers did not include these arguments in its moving brief and has provided no excuse for its failure to do so. It is inappropriate for Coopers to raise these additional arguments in its reply. Nevertheless, the court has considered these arguments, and concludes that they do not outweigh the public interest factors favoring plaintiffs.

Coopers' first argument is that it will be unable to implead other parties because they are not subject to the court's jurisdiction. Assuming that Coopers' argument is correct, it would still be able to pursue actions for contribution or indemnification in Canada. Although this factor weighs in favor of dismissal, it does not outweigh the other public interest factors.

Coopers also argues that the plaintiffs would be forced to collect any judgment in Canada. This is more properly characterized as a private interest factor affecting the individual litigants than a public interest factor. Despite this limitation on their ability to collect a judgment, the plaintiffs have chosen New Jersey as their forum. Consequently, this factor does not favor either forum.

Third, Coopers argues that it will be subject to duplicative litigation and inconsistent judgments if Canadian residents pursue a class action in Canada. This argument does not favor dismissal. Canadian residents are in a materially different position with respect to securities violations than United States citizens because Canada does not recognize the fraud-on-the-market theory of reliance. Under Canadian law, investors would have to demonstrate individual reliance. An action by Canadian citizens trading on the VSE is substantially different from this suit and thus, the litigation is not duplicative.

Although some private interest factors favor the Canadian forum, the public interest factors overwhelmingly favor this forum.

Even if Canada were an adequate alternative forum, the court concludes that the balance of public and private interest factors favors this forum. Consequently, Coopers' motion to dismiss for forum non conveniens is DENIED.

### D. *Failure to State a Claim*

Rule 12(b)(6) allows a party to move for a dismissal based upon the pleader's "failure to state a claim upon which relief can be granted." As the long-established federal policy of civil litigation is to decide cases on the proofs, *Melo–Sonics Corp. v. Cropp*, 342 F.2d 856 (3d Cir.1965), the district courts generally disfavor Rule 12(b)(6) motions. *Panek v. Bogucz*, 718 F.Supp. 1228, 1229 (D.N.J.1989).

In deciding a motion to dismiss for failure to state a claim, all allegations in the pleadings must be accepted as true, and the plaintiff must be given the benefit of every favorable inference that can be drawn from those allegations. *See Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 n. 1 (3d Cir.1987). "All the rules require is a short and plain statement of the claim that gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. at 103.

The rule, however, does require that the pleader "state a claim upon which relief can be granted." Having accepted the facts in the pleadings as true, and giving them all reasonable inferences, the Court may dismiss under Rule 12(b)(6) where the pleadings lack any cognizable basis in the law. The United States Supreme Court explained as follows:

> Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding. Nothing in Rule 12(b)(6) confines its sweep to claims of law that are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with

the allegations," a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or a close but ultimately unavailing one. What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations. District court judges looking to dismiss claims on such grounds must look elsewhere for legal support.

*Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (citations omitted); *see also California ex rel. Van de Kamp v. Reilly,* 750 F.Supp. 433, 435 (E.D.Cal.1990) (dismissal under 12(b)(6) appropriate when complaint lacks cognizable legal basis).

Pursuant to Rule 12(b)(6), a plaintiff's complaint must be dismissed for failure to state a claim if a defendant demonstrates "beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 102; *Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 634 (3d Cir.1989); *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980). "Although the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103.

■ In order to maintain a claim under § 20(a) of the Exchange Act, the plaintiffs must establish not only that Campney and Koch are control persons, but also that they were "in some meaningful sense culpable participants in the fraud perpetrated by controlled persons." *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 885 (3d Cir.1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976) (citation omitted).

Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead allegations of fraud with particularity. Nevertheless, there is "an overwhelming trend in this circuit to allow section 20(a) actions to withstand rule 9(b) motions based on a simple pleading of control." *Easton & Co. v. Mutual Benefit Life Ins. Co.,* [1991–92 Transfer Binder] Fed.

Sec.L.Rep. (CCH) ¶ 96,595, 1992 WL 136857 (D.N.J.1992). The plaintiff "need only plead circumstances establishing control because: (1) the facts establishing culpable participation can only be expected to emerge after discovery; and (2) virtually all of the remaining evidence, should it exist, is usually within the defendants' control." *Id.* at 92,808, 1992 WL 136857. *See also In re Midlantic Corp. Shareholder Lit.,* 758 F.Supp. 226, 236–37 (D.N.J.1990) ("prior to discovery in any meaningful sense, plaintiff can hardly be able to plead the precise culpable conduct of each defendant"); *Cammer v. Bloom,* 711 F.Supp. 1264, 1295 (D.N.J.1989), *appeal dismissed,* 993 F.2d 875 (3d Cir.1993).

■ For the purposes of this motion, defendants do not dispute that plaintiffs have alleged control. They argue, however, that plaintiffs have failed to allege culpable participation with the specificity required by Rule 9(b). Plaintiffs allege that as Nesmont directors and members of the Audit Committee, Campney and Koch reviewed and approved the misleading financial statements and public disclosures, including reports filed with the SEC. Amended and Consolidated Class Action Complaint ¶ 102, 103. Plaintiffs also allege that the defendants had access to adverse non-public information. ¶ 28. At this stage in the litigation, plaintiffs' allegations are sufficient to survive a motion to dismiss.

### E. Personal Jurisdiction

■ The personal jurisdiction of a federal district court extends to non-residents of the state in which the court sits to the extent authorized by that state's laws. Fed.R.Civ. Pro. 4(e); *see Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir.1987). Under Section 27 of the Securities and Exchange Act of 1934, United States courts may exercise personal jurisdiction over non-residents to the full extent permitted by the due process clause. *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1339 (2d Cir.1972); *Perez–Rubio v. Wyckoff,* 718 F.Supp 217, 227 (S.D.N.Y.1989).

■ Federal due process requires

that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This minimum contacts analysis focuses on "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). The contacts must have resulted from the defendant's purposeful conduct toward the forum state, not the unilateral activity of the plaintiff, and must be such that the defendant "should reasonably anticipate being haled into court" there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■■■■■ The plaintiff bears the burden of establishing a prima facie case of sufficient contacts between the defendant and the forum state. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987). On a motion to dismiss, the written submissions must be viewed in the light most favorable to the plaintiff. *La-Rose v. Sponco Mfg. Inc.*, 712 F.Supp. 455, 458 (D.N.J.1989). Minimum contacts exist where the defendant is (i) doing business in the United States, (ii) doing an act in the United States, or (iii) causing an effect in the United States by an act done elsewhere. *Leasco*, 468 F.2d at 1340.

■■■■■ Once the plaintiff demonstrates that a defendant purposefully established minimum contacts with the forum state, the inquiry becomes whether the assertion of jurisdiction is consistent with principles of fairness. However, "[w]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1984). Even if such considerations exist, fairness may be achieved without finding jurisdiction

unconstitutional—for example, by allowing a change of venue to a non-resident defendant who argues substantial inconvenience. *Id.*

■■■■ Defendants argue that their actions as corporate officers and directors do not subject them to jurisdiction in New Jersey. Both Campney and Koch are residents of Canada and conducted their business related activities in Canada. Plaintiffs do not dispute that the parties did not have direct contacts with this forum, but argue that their involvement in approving and disseminating financial statements with knowledge that they would affect the price of Nesmont stock on the NASDAQ market satisfies the requirement that the defendants purposefully avail themselves of the forum.

In a factually similar case, the Southern District of New York held that a Canadian third-party defendant was subject to the court's jurisdiction where the third-party plaintiff had made a prima facie showing that the defendant was a "controlling person." *Landry v. Price Waterhouse Chartered Accountants*, 715 F.Supp. 98, 102 (S.D.N.Y. 1989). The court noted that the defendant knew or should have known of the company's NASDAQ listing and invoked the benefit of trading stock on the NASDAQ market.

Defendants have not identified any securities cases to the contrary. They cite four District of Pennsylvania cases holding that "a corporate officer or director's actions taken in his corporate capacity are, by themselves, insufficient to bring him personally within the jurisdiction of this court." *Simkins Corp. v. Gourmet Resources Int'l*, 601 F.Supp. 1336, 1345 (E.D.Pa.1985). These cases do not consider the jurisdictional basis for "controlling persons," however, and are thus not persuasive.

Plaintiffs have made a prima facie showing that Campney and Koch are "controlling persons" who allegedly approved and disseminated financial statements that they knew would influence the price of Nesmont securities on the NASDAQ market. Consequently, Campney and Koch are subject to the jurisdiction of this court.

## III. CONCLUSION

Based upon the foregoing, defendants' motions to dismiss are DENIED.