In re BAAN COMPANY SECURITIES LITIGATION.

This Document Relates to All Actions.

No. CIV. 98–2465 JHG/JMF.

United States District Court,
District of Columbia.

Jan. 14, 2000.

Andrew Neil Friedman, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, for Laure Salerno.

Leslie Gordon Fagen, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, for Tom C. Tinsley, Baan Co., N.V., Plaintiffs' Liaison Counsel, David C. Hodgson, Amal M. Johnson.

Joshua H. Vinik, Milberg, Weiss, Bershard, Hynes & Lerach, LLP, New York, NY, for Lead Plaintiffs.

Lee S. Shalov, Cary L. Talbot, Milberg, Weiss, Bershard, Hynes & Lerach, LLP, New York, NY, Ralph M. Stone, shalov, Stone & Bonner, New York, NY, for Plaintiffs' Co–Lead Counsel.

Andrew L. Sandler, Colleen Patricia Mahoney, Joan Margaret Macaulay, Stephen Paul Vaughn, Skadden, Arps, Slate, Meagher & Flom, LLP, for Jan Baan, J.G. Paul Baan.

Robert James Symon, Spriggs & Hollingsworth, Washington, DC, for Vanenburg Ventures B.V.

Luis De La Torre, Securities & Exchange Commission, Washington, DC, amicus.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

### BACKGROUND

In this class action,[1] plaintiffs, purchasers of Baan Corp. ("Baan") common stock, American Depository Receipts ("ADRs"),[2] warrants, and options, are suing defendants[3] for alleged violations of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a (1997). Plaintiffs claim "that defendants made materially false and misleading statements about Baan's business, finances and future prospects."[4] Compl. at 1.

Defendants Vanenburg Ventures, B.V. ("Vanenburg") and J.G. Paul Baan ("Paul Baan") have moved to dismiss and plaintiffs have filed *Plaintiffs' Motion for Leave to Take Expedited Discovery Concerning Jurisdictional Issues.* Upon consideration of plaintiffs' motion and the replies and responses thereto, I will deny plaintiffs' motion without prejudice to their being permitted to take the restricted discovery I will describe in this opinion.

### ANALYSIS

When a motion to dismiss for lack of jurisdiction over the person is filed, this

1. According to the amended complaint filed April 22, 1999, the class period runs from January 28, 1998 to October 12, 1998. *Amended Consolidated Complaint for Violation of the Securities Exchange Act of 1934* ("Compl.") at 1.

2. Plaintiffs "purchased or otherwise acquired Baan securities on the NASDAQ National Market, the Amsterdam (Netherlands) and Frankfurt (Germany) stock exchanges, and/or several additional German stock exchanges." Compl. at 6–7.

3. Defendants are Tom C. Tinsley, Baan Company N.V., Jan Baan, N.M. Klass Wagenaar, J.G. Paul Baan, William O. Grabe, David C. Hodgson, Amal M. Johnson, and Vanenburg Ventures, B.V.

4. Plaintiffs allege, *inter alia,* that defendants overstated Baan's earnings, misrepresented its ability to compete with its largest competitor, took advantage of the inflated prices of Baan securities made and made huge profits on their sale, and failed to disclose adverse financial projections and results. *Id.* at 2–4.

Circuit permits limited discovery if the opponent of the motion has made allegations specific enough to permit the conclusion that discovery may enable him to establish that assertion of jurisdiction over the movant's person meets the requirements of the Due Process Clause. *GTE New Media Services Inc. v. BellSouth Corporation*, 199 F.3d 1343, 1351–52 (D.C.Cir. 2000). *Compare Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1088–1090 (D.C.Cir.1998) *and Naartex Consulting Corporation v. Watt*, 722 F.2d 779, 787 (D.C.Cir.1983) *with El–Fadl v. Central Bank of Jordan*, 75 F.3d 668, 675 (D.C.Cir.1996) *and Crane v. Carr*, 814 F.2d 758 (D.C.Cir.1987) *and Edmond v. United States Postal Service*, 949 F.2d 415, 424 (D.C.Cir.1991) *See also Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C.Cir.1994), *cert. denied*, 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995); *Foremost–McKesson v. Islamic Republic of Iran*, 759 F.Supp. 855 (D.D.C.1991).

■ The scope of discovery is defined by law pertaining to the limits imposed by the Due Process Clause upon the court's assertion of jurisdiction over the defendants. The defendants who have moved to dismiss for lack of jurisdiction over their persons are a foreign national, J.G. Paul Baan, and a Netherlands corporation, Vanenburg Ventures, B.V. which has no place of business in the United States. The court's jurisdiction over these defendants is based on 15 U.S.C. § 78aa (1997) which, in conjunction with Fed.R.Civ.P. 4(k)(D)(2), authorizes service of process upon them anywhere in the world. It does not follow, however, that merely because service has been effected in accordance with American rules of procedure, that alien defendants can be thereby made subject *ipso facto* to the jurisdiction of any American court. Instead, aliens may claim the Fifth Amendment protection from being haled into an American court in a manner which contradicts traditional (and American) notions of fair play and justice.

*See, e.g., Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)(hereafter "Asahi"); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ That broad standard of "fair play and justice" requires a showing of such minimum contacts between the alien and the forum that the assertion of jurisdiction over his person does not offend due process. *Asahi*, 480 U.S. at 109, 107 S.Ct. 1026. When, as is true in this case, a federal statute authorizes service of process anywhere the defendant can be found, i.e., anywhere on the face of the earth, the minimum contacts are those between the defendant and the United States, as opposed to those between the defendant and the District of Columbia under the District's long arm statute. *Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen*, 197 F.3d 1070, 1073–74 (11th Cir.1999); *Chew v. Dietrich*, 143 F.3d 24, 28 n. 4 (2nd Cir. 1998); *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 946 (11th Cir.1997); *United States Securities and Exchange Commission v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir.1997)(securities case); *Nazareth National Bank & Trust Co. v. E.A. International Trust*, 1999 WL 549036 (W.D.Pa. July 26, 1999)(securities case).

■ Unfortunately, analysis of the vague phrase "such minimum contacts as will not offend due process" is not aided by a case law as clear as the one I have just summarized. A central problem in defining the legal standard was the inability of a majority of the Supreme Court to agree on a crucial question: whether the defendant's placing an object in the stream of commerce for a profit was sufficient in itself to impose jurisdiction over his person in any forum in which the object caused harm. *Asahi*, 480 U.S. at 102, 107 S.Ct. 1026. While Justice O'Connor's plurality opinion firmly rejected that principle, the concurring justices, Brennan and Stevens, refused to accept that rejection and prem-

ised their concurrence on other grounds. Despite their differences, there is common ground in the three opinions of O'Connor, Brennan, and Stevens. All the justices would agree that while merely placing the object in the stream of commerce might or might not be in itself sufficient, the defendant's knowledge that the object will be sold in a particular forum combined with his exploitation of the market in that forum would suffice. *Asahi* at 112, 107 S.Ct. 1026 (O'Connor, J.), 121 (Brennan, J.)("I cannot join in the determination ... that Asahi's regular and extensive sales of component parts to a manufacturer it knew making regular sales of the final product in California is insufficient to establish minimum contacts with California") *Id.*, (Stevens, J.)(Asahi arguably engaged in a "higher quantum of conduct" than placing his product into the stream of commerce; regular course of dealing (deliveries over 100,000 units over a period of several years) constitutes purposeful availment even though the item delivered was marketed throughout the world). *See Omeluk v. Langsten Slip & Batbyggeri*, 52 F.3d 267, 271 (9th Cir.1995)(all agree after *Asahi* that mere presence of product in forum insufficient where product has not been marketed there and its presence in forum is not part of regular and anticipated flow of products from the manufacturer).

Given these statements, the circuit courts of appeals and district courts have followed this admittedly uncertain guidance by rejecting talismanic reliance on abstract concepts[5] and focusing on specific facts such as the defendant's knowledge that his product is being marketed in the forum and its efforts to create, nurture, and exploit that market. While such fact specific cases yield no lapidary conclusion, it can be said that the more evidence that the defendant knew that his product would be sold in the forum and made conscious efforts to increase the market for its product in that forum by, for example, customer service and advertising, the easier it is to conclude that the contacts between the defendant and the forum are sufficient to assert jurisdiction over his person. *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 242–244 (2d Cir.1999)(exclusive sale rights agreement to sell products in North America evidenced effort to exploit America market, including New York); *Pennzoil Products Co. v. Colelli & Associates, Inc.*, 149 F.3d 197, 203–208 (3d Cir.1998)(awareness that customers were selling product to third parties and expressed desire to maintain relationship with one such third party sufficient); *Mid–America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1358–1362 (7th Cir.1996)( sample sent to forum, knowledge of shipment to forum, storage in warehouse in forum, shipment of replacement part to form sufficient contacts); *Metropolitan Life Insurance Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 561–573 (2d Cir.1996)(sales of $4 million, relationship with dealers in forum, advertising in forum, visits to forum by personnel, targeting of firms in forum sufficient), *cert. denied*, 513 U.S. 948, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir.1994)(knowledge that object would be sold in forum insufficient without showing that the defendant directed activity towards the forum), *cert. denied*, 513 U.S. 1151, 115 S.Ct. 1103, 130 L.Ed.2d 1070 (1995); *Renner v. Lanard Toys Limited*, 33 F.3d 277 (3d Cir.1994)(awareness of sale of product without regularity of shipments into forum insufficient); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612–615 (8th Cir. 1994)(use of regional distributors belies claim that defendant did not know that product was being sold in forum when it knew of sales in bordering states), *cert. denied*, 513 U.S. 948, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994); *Vermeulen v. Re-*

5. The "stream of commerce" theory still has its adherents. *See Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1547 n. 17 (11th Cir.), *cert. denied*, 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993).

*nault, U.S.A., Inc.*, 985 F.2d at 1545–1550 (nationwide distribution system of car designed for American market and national advertising sufficient); *Falkirk Mining Co. v. Japan Steel Works. Ltd.*, 906 F.2d 369, 374–375 (8th Cir.1990)(that purchaser brought product into forum when manufacturer did not control distribution system and did not advertise or solicit business insufficient); *Mason v. F. LLI Luigi, Franco Dal Maschio Fu G.B.*, 832 F.2d 383 (7th Cir.1987)(minimum contacts when defendant custom made machine for company in forum state); *Lodgistix, Inc. v. Carnival's Crystal Palace Hotel Corp., Ltd.*, 1990 WL 7511 (D.Kan. Feb. 1, 1990)(sufficient when defendant entered into contract with forum resident and agreed that forum's laws would apply and when defendant knew that if it did not pay it would be haled into forum's court). *See also GTE New Media Services Inc. v. BellSouth*, at 1349 ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not show any persistent course of conduct by the defendants in the District.").

This conclusion is hardly surprising. Prior to *Asahi*, the Supreme Court held that a showing that the defendant purposefully availed himself of the benefits available to him in a forum was essential to the assertion of jurisdiction over him by that forum. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). It therefore follows that the theoretical foreseeability that a product would injure someone in the forum could not justify the assertion of the forum's jurisdiction over the manufacturer of that product. Aside from sounding too much like the poem which explains why a kingdom was lost for want of a nail, imposing jurisdiction solely because the presence of the defendant's product in the forum was foreseeable is inconsistent with the obligation to establish a purposeful availment of the forum's benefits. It is, after all, foreseeable that a person who buys a car in New Jersey may drive it to Oklahoma but it hardly follows that it is reasonable to require the seller of the car to submit to jurisdiction in Oklahoma when a defect in the car causes an accident in Oklahoma and the only connection between the seller and Oklahoma is the presence of the car in the state when the accident occurred. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The true question is not whether an accident's occurring in Oklahoma was theoretically foreseeable but whether it was reasonable for the seller of the car to anticipate that he would be haled into court in that state because by his own acts he purposefully availed himself of the benefits of that state's laws and the potential market for his products. *Id.*

■ This analysis requires the rejection of the central theory upon which plaintiffs would premise this Court's jurisdiction over the defendants. The statute upon which plaintiffs rely, the Securities Exchange Act of 1934, 15 U.S.C.A. § 78t (1997), imposes liability upon any person who controls a corporation or other entity which violates the various provisions of that statute. Plaintiffs then reasons that if it can show that the defendants controlled the corporation which engaged in the acts claimed to violate the statute, that showing will sustain the court's jurisdiction over their persons. But, that theory goes too far. Under it, jurisdiction could be predicated on an act done anywhere in the world by a person who did not and could not have known that his act would affect the value of a security owned by some one in the United States. In a world that is shrinking as a result of the communications revolution, and with the rapid emergence of a global, economic culture, acceptance of plaintiff's theory would mean that an individual in Guam who used the Internet to purchase 10 shares of stock of a company in the Netherlands could cause a person who has never been in the United States to appear and defend itself in the United States District Court for the District of Guam merely by alleging that he

controlled the Netherlands corporation which issued the stock. The staggering implications of the acceptance of that theory makes it understandable that the cases, including the ones upon which plaintiffs try to rely, have never gone that far. To the contrary, each (with one exception) has required more than the allegation that defendant controlled the entity which performed the act claimed to have violated the pertinent securities law before asserting jurisdiction over its person.

In *McNamara v. Bre-X Minerals Ltd.,* 46 F.Supp.2d 628 (E.D.Tex.1999), the court permitted the assertion of personal jurisdiction only after the plaintiff made out what the court called a prima face case of "control person liability." *Id.* at 635. It first found that a *prima facie* case had been made against a defendant corporation because the plaintiff established that the defendants made a "clear showing" that the defendant corporation's representatives were an extensive presence on the board of the corporation which plaintiff claimed violated the law. It then asserted personal jurisdiction over the individual defendants because it found that individual defendants either (1) disseminated financial statements knowing that those statements would affect the price of stock when he also knew by signing an SEC filing that the stock would be traded in America, or (2) prepared the fraudulent press releases claimed to violate the pertinent statute, or (3) authorized the corporation claimed to have violated that statute to apply for a listing on an American exchange, promoted the stock in America, and was involved in preparing the false press release complained about, or (4) signed a form filed with the SEC and reviewed the allegedly false press releases. *Id.*

The involvement it detailed permitted the court to summarize its holding by stating:

> Based on these facts, and in light of the above authority, the Court has determined that the Plaintiffs have made a prima facie showing that all of these

Defendants have at least the ability to directly or indirectly influence both the general operations of Bre-X and the conduct in question. Therefore, the Plaintiffs have made a prima facie showing that these Defendants are controlling persons of Bre-X. *See Thompson,* 636 F.2d at 958; *Wagner,* 501 F.2d 1120; *Derensis,* 930 F.Supp. 1003; *Landry,* 715 F.Supp. 98; *Dyer,* 336 F.Supp. 890. Also, every Insider Defendant engaged in one or more of the following activities: securing Bre-X's NASDAQ listing; approving and/or signing the allegedly false Bre-X or Bresea SEC filings; reviewing and/or writing the allegedly false press releases; promoting Bre-X to investors and analysts in the United States. Given this, the Court is satisfied that the Plaintiffs have made a prima facie showing that the remaining Insider Defendants engaged in the requisite minimum contacts with the United States to support this Court's jurisdiction over them. *See Itoba,* 930 F.Supp. at 40–41; *Reingold,* 599 F.Supp. 1241.

*Id.* at 640.

Similarly, in *Derensis v. Coopers & Lybrand Chartered Accountants,* 930 F.Supp. 1003 (D.N.J.1996), the court sustained the exercise of jurisdiction over parties claimed to be controlling persons upon an allegation that "they approved and disseminated financial statements that they knew would influence the price of Nesmont securities on the NASDAQ market." *Id.* at 1014.

In *Itoba Limited v. LEP Group PLC,* 930 F.Supp. 36 (D.Conn.1996) a defendant was held to be subject to the personal jurisdiction of an American court because the director of a corporation knew or should have known that a form he approved would be filed with the SEC and relied upon by potential investors and when the plaintiff alleged that he relied on that from when he purchased that corporation's securities. *Id.* at 40.

In *Landry v. Price Waterhouse Chartered Accountants*, 715 F.Supp. 98 (S.D.N.Y.1989), the court reached the same conclusion upon a showing that the defendant knew or should have known that a particular stock was being traded on an American exchange and was a "behind the scenes player" in a particular transaction under circumstances indicating that he must have had information that the transaction would have an impact on the price of the stock being traded on NASDAQ. *Id.* at 100. In *United States Securities and Exchange Commission v. Carrillo*, 115 F.3d 1540 (11th Cir.1997), the court found that the defendants, asserted to be controlling persons, had purposefully availed themselves of the benefits of the United States because they had advertised their stock in the United States, mailed those ads to potential investors and created bank accounts in the United States to facilitate their American investors trading in the stock they were selling. Jurisdiction over their persons was therefore appropriate in a lawsuit premised on allegedly false statements in those very ads. *Compare Doe v. Unocal Corp.*, 27 F.Supp.2d 1174, 1180 (C.D.Cal.1998)(listing of stock on American exchange and promoting it insufficient).

Personal jurisdiction was also upheld in the case entitled *Application to Enforce Administrative Subpoenas Duces Tecum of Securities and Exchange Commission v. Knowles*, 87 F.3d 413 (10th Cir.1996), upon a finding that the defendant purposefully directed his activities at the United States, that he personally participated in the very actions claimed to violate the law, and that his actions directed at the United States market were "purposeful, continuous and systematic." *Id.* at 418–419.

There is one case in which the Ninth Circuit held that "personal jurisdiction ... exits if the plaintiff makes a non-frivolous allegation that the defendant controlled a person liable for fraud." *San Mateo County Transit District v. Dearman, Fitzgerald and Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir.1992). But, that case involved a domestic corporation not an alien one, and the Supreme Court has cautioned that the implications for this country's relations with other nations requires a more stringent analysis of the minimum contacts that will satisfy due process than would be appropriate if a domestic corporation is the defendant. *Asahi*, 480 U.S. at 114–115, 107 S.Ct. 1026. *Accord: Falkirk Mining Co.*, 906 F.2d at 374–375 (unique burden on alien forced to litigate in America noted); *Pawluczyk v. Global Upholstery Co., Ltd.*, 854 F.Supp. 364, 367 (E.D.Pa.1994)(same); Earl M. Maltz, *Comment, Unraveling The Conundrum of The Law of Personal Jurisdiction: a Comment on Asahi Metal Industry Co. v. Superior Court of California*, 1987 Duke L.J. 669, 690.[6] ("Therefore, as *Asahi* suggests, a greater volume of additional connections is required to justify the exercise of jurisdiction over the citizen of a foreign nation"). Additionally, this one sentence is utterly inconsistent with the persistent insistence of the Supreme Court since the decision in *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. 1228, that personal jurisdiction be premised on a showing that the defendant has, by his acts, purposefully availed himself of the

---

**6.** Assertions of United States judicial jurisdiction over foreigners can readily arouse foreign resentment. Gary B. Born, *Reflections on Judicial Jurisdiction in International Cases*, 17 Ga. J. Int'l & Comp. L. 1 (1987). Professor Born describes additional dangers:

Because exorbitant assertions of judicial jurisdiction by United States courts may offend foreign sovereigns, these claims can provoke diplomatic protests, trigger commercial or judicial retaliation, and threaten friendly relations in unrelated fields. Equally important, exorbitant jurisdictional claims can frustrate diplomatic initiatives by the United States, particularly in the private international law field. Most significantly, these claims can interfere with United States efforts to conclude international agreements providing for mutual recognition and enforcement of judgments or restricting exorbitant jurisdictional claims by foreign states.

*Id.* at 30.

forum's benefits. *Asahi*, 480 U.S. at 108–109, 107 S.Ct. 1026. *Accord: Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World Wide Volkswagen v. Woodson*, 444 U.S. at 297, 100 S.Ct. 559. That insistence has been repeated by the court of appeals for this circuit in all of its cases and most significantly in the case involving the assertion of jurisdiction over an alien corporation. In the latter case, sufficient "minimum contacts" were found to exist because that corporation had purposefully availed itself of the benefits of doing business in the District of Columbia since it had serviced and nurtured a market for its product in the District. *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200 (D.C.Cir.1981).

If the *San Mateo* case is read to permit the exercise of jurisdiction based on no more than an allegation that the defendant controlled the entity which performed the act complained of, it creates the very horrible I paraded: a lawsuit in any District Court against a defendant, domiciled or doing business any where on the face of the earth, based on the purchase of shares of a publicly traded stock and the mere allegation of control over the entity which performed the act complained of. The *San Mateo* conclusion and its implications are so utterly inconsistent with controlling authority in this jurisdiction that it can provide no support for plaintiffs' contention.

It bears emphasis that the distinction between specific and general jurisdiction is crucial in the due process analysis. The presence of a corporation, be it domestic or alien, in a forum may be so continuous and deep that the assertion of any cause of action against it may be entertained in that forum. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). If such a presence cannot be established, only special jurisdiction can be asserted, meaning that the action or claim must be based on the contact claimed in order to confer jurisdiction.

*Helicopteros Nacionales Colombia S.A.*, 466 U.S. at 414–416 & n. 9, 104 S.Ct. 1868; *Stabilisierungsfonds Fur Wein*, 647 F.2d at 203 n. 5. Since plaintiffs cannot and do not claim that defendants' presence in the United States would justify the assertion of general jurisdiction, personal jurisdiction can only be based on the relationship between their contacts with the United States and the actions complained of in the complaint.

When the scope of discovery is thus limited to the jurisdictional question presented, it is clear that the discovery plaintiffs seek is fatally over broad. Plaintiff seeks a universe of documents, such as the minutes of all meetings of the Board of Directors, all documents distributed at those meetings, and all documents concerning transactions between defendant Vanenberg and defendant Paul Baan. Plaintiffs cannot pretend that all of these documents are related to the transactions at issue or the minimum contacts plaintiffs have to establish in order for their case against these defendants to proceed.

■ That the discovery plaintiffs have attempted is impermissible does not mean that all discovery should be prohibited. To the contrary, refusing to permit legitimate discovery on jurisdictional issues is an abuse of discretion. *Edmond v. United States Postal Service*, 949 F.2d at 424. In an accompanying order I have, therefore, directed counsel for the parties to meet and confer to see if they can create a mutually agreeable discovery plan. Without purporting to provide a complete list, appropriate discovery would cover the following areas:

1. On what exchange (if any) did plaintiffs purchase the ADR's and how much did they purchase?

2. What knowledge did these defendants have that the ADR's were being sold on that exchange?

3. What filings with the SEC did these defendants make or approve with

reference to the ADR's being sold on American exchanges?

4. What efforts did these defendants make to induce or encourage American investors to buy the ADR's?

5. What precise connection did these defendants have with the transactions and events described in plaintiffs' complaint, ¶¶ 26–104, which they claim constituted a violation of law. Did they know of these actions? Did they approve them, formally or informally?

Additionally, I know that counsel will bear in mind that even if a plaintiff establishes sufficient minimum contacts between the defendant and the forum, the assertion of personal jurisdiction will still be denied if its assertion is, nevertheless, unreasonable and unfair. *Asahi*, 480 U.S. at 114, 107 S.Ct. 1026; *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174; *Vermeulen*, 985 F.2d at 1550–1552; *Kernan*, 175 F.3d at 244–245. Making that determination requires a balancing of factors which include (1) the burden upon the defendant if compelled to litigate in the forum, (2) the interests of the United States as forum in the resolution of the controversy, (3) the most efficient resolution of the controversy, and (4) the availability of relief in another forum.

While it would appear that these factors are more legal than factual, discovery directed to them is as equally legitimate as the rest of the discovery I will permit. For example, in this case, the percentage of securities sold to American investors through NASDAQ, as opposed to the percentage sold to the rest of the world might bear significantly on the interest of the United States as forum in the resolution of the controversy.

I have, throughout this opinion, described the process to now commence as "discovery." By doing that I certainly do not wish to prevent the parties from stipulating that certain jurisdictional facts are true. Indeed, if they can do so, so much the better.

Two final thoughts. First, I have premised the scope of discovery upon the broadest interpretation of "minimum contacts" in the case law, even though some of that case law and in particular the case law involving securities cases is not binding on the trial judge. I am certainly not prejudging how she will resolve the jurisdictional question. She may agree or disagree with it as she sees fit. By predicating the scope of discovery on the farthest possible reach of the case law, I have exercised my discretion to get her all the information she may need at the risk of getting information she may not.

■ Second, I certainly have not ignored that a statute now restricts discovery in securities cases. The Private Securities Litigation Reform Act of 1995 ("PSLRA") 15 U.S.C.A. § 78u–4(b)(3)(1997) states: "[i]n any private action arising under this chapter ... all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."

The fail-safe, permitting discovery to prevent undue prejudice, coincides with the principle articulated in the controlling authority. In a circuit such as this one, where there is a mature case law permitting limited jurisdictional discovery, there is a perfect coincidence between the statute and the case law. Limited discovery must be permitted to prevent the unfairness of a party's being denied access to information which his opponent possesses and which, if produced, would establish the legitimacy of his being before the court. There is no reason to read the statute or its legislative history to abolish the case law permitting limited jurisdictional discovery and to create the very unfairness that case law prevents. To the contrary, in my view, limited jurisdictional discovery

simultaneously satisfies the statute and the case law.[7]

## ORDER

In accordance with the Memorandum Opinion being simultaneously issued, it is ORDERED THAT *Plaintiffs' Motion for Leave to Take Expedited Discovery Concerning Jurisdictional Issues* is denied but that counsel for the plaintiff and counsel for the defendants J.G. Baan and Vanenberg Ventures. B.V. shall meet and confer and attempt in good faith to create the discovery plan described in the Memorandum Opinion. The plan agreed to shall be jointly filed with the court on February 1, 2000. If counsel are unable to agree, they shall jointly file on February 1, 2000 a statement indicating what, if any, portions of a discovery plan were agreed to and the nature of their disagreement as to the issues which divided them.

---

**7.** Plaintiffs' assertion that the stay of discovery only applies to a motion to dismiss for failure to meet the pleadings requirements of 15 U.S.C.A. § 78u–4(b)(1) & (2)(1997) *Plaintiffs' Motion for Leave to Take Expedited Discovery Concerning Jurisdictional Issues* at 6–7 ignores that 15 U.S.C. § 78u–4(b)(3) applies to *any* motion to dismiss. The purpose of the statute—to stay discovery until the motion is resolved to prevent undue expense unless undue prejudice is shown—must be effectuated whatever the legal premise of the motion.